ROESSLER & HASSLACHER CHEMICAL CO. v. UNITED STATES (No. 1055).[1]

CRUCIBLES OR POTS.

These metal vessels are designed to be incased in brick for use, fires being built under them, in the reduction of metals. They are not containers and neither are they tanks or vessels intended to serve the purpose of keeping, retaining, or storing gases, liquids, or other material. They are not dutiable under paragraph 151, tariff act of 1909, but under paragraph 199 of that act.

United States Court of Customs Appeals, April 29, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30402 (T. D. 32926). [Affirmed.]

Brooks & Brooks (F. W. Brooks, jr., of counsel) for appellants.

William L. Wemple, Assistant Attorney General (William A. Robertson, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Wrought iron cylindrical vessels imported at the port of New York were classified by the collector of customs as manufactures of

metal dutiable at 45 per cent ad valorem under the provisions of paragraph 199 of the tariff act of 1909, which paragraph reads as follows:

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

The importers protested that cylindrical tanks or vessels were specially provided for in paragraph 151 of said act, and that the goods should therefore have been assessed at 30 per cent ad valorem in accordance with that part of said paragraph which reads as follows:

151. * * * Cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty, thirty per centum ad valorem; * * *.

It definitely appears from the evidence that the metal vessels in controversy are designed to be incased in brick so that a fire may be built under them and that they are used by manufacturers of chemicals for the reduction of metals. With the exception that the articles are referred to in the report of the appraiser and by some of the witnesses as tanks, there is nothing at all in the record from which it could be inferred that they are ever used as containers or for holding gas, liquids, or other material. In use, the wares are filled with a mixture of metals and chemicals not for the purpose of preserving or keeping such materials until required for consumption, but in order to procure by the application of heat a molten metal, which is drawn off as rapidly as produced. Such appliances are not tanks within the ordinary meaning of the word and, indeed, that they are not always so known in the trade is apparent from the testimony of the assistant secretary of the importers, who states that they are sometimes called crucibles.

Paragraph 151 imposes a duty of 30 per cent ad valorem on large-sized, strongly built cylindrical or tubular tanks or vessels designed to be used for holding gas, liquids, or other material, and having, whether full or empty, a tariff status and commercial value of their own. United States v. Marx (1 Ct. Cust. Appls., 152; T. D. 31210); United States v. Carramone (2 Ct. Cust. Appls., 30, 33; T. D. 31577).

The articles imported are apparently large-sized, strongly built cylindrical vessels, and to that extent it may be admitted for the purposes of the case that they do fall within the description of the statute. But are they designed to be used for holding gas, liquids, or other material? That is the question. We think not. The statute subjects the metal vessels of the type mentioned to duty whether full or empty. The phrase "whether full or empty" is generally applied in tariff acts to articles fitted or designed to be used as containers, and saying nothing more, that fact strongly indicates

that Congress never intended to give to paragraph 151 a scope which would include such articles as crucibles or melting pots. Moreover, as applied to tanks or vessels, the expression "for holding" necessarily implies not only the inclosing of something, but also its keeping, retention, or storage either for transportation or pending the call for its use. The articles in controversy are not containers and neither are they tanks or vessels designed or intended to serve the purpose of keeping, retaining, or storing gases, liquids, or other material. In our opinion they are nothing more than appliances for the melting of metal, and consequently not dutiable under the provisions of paragraph 151, as claimed by the importers.

The decision of the Board of General Appraisers is *affirmed*.